et al. On behalf of the Appalachians to Robert Sheridan, on behalf of the Appalachians, Ms. Melinda Col-Ross. Thank you. Col-Ross, I'm sorry. Is it Col-Ross? Col-Ross, he's got it at the end. There's a motion to supplement the record with the defendant's reply below, and we will take it with the case that we can hold granted. Before we start with the oral argument, Justice Burkett is indisposed and is not here. He will listen to the oral arguments over the internet. Also, there is a motion to supplement the record, and we will take that with the case. Is there any objection by the respondent? No. Thank you. Thank you, Your Honor. Mr. Sheridan. Thank you very much, Justice. It's been a year since I have argued before Your Honors. The courtroom doesn't seem to have changed much. Everything else around it was. I thought I got here early because I really was confused. We want you to argue it on behalf of the plaintiff, who is also the Appalachian in this case. This, Your Honors, granted a Rule 306 petition. This is an appeal from the granting of a transfer of venue from Winnebago County to Carroll County. I thank Your Honors for the opportunity to address you on these points. I was once told by a judge of the Circuit Court of Cook County that foremount convenience had become a cottage industry. I don't know if that's true, but certainly there's a lot of litigation that arises with respect to it. And much of that litigation, I believe, centers around the forest being lost for the trees. The concept of venue is in itself a concept of fairness. And as the Supreme Court has pointed out many times, the Venue Act itself prescribes an initial limitation upon where a plaintiff can bring an action in this state. And two places, as Your Honors know, are available. A place where a defendant resides or where the cause of action... What's your definition of fairness? Well, we're going to get to that in just a moment, if you will, Judge. If, since the plaintiff did not reside in Winnebago County and also did not file this in the place, the county of the accident, was the plaintiff forum shopping? Ah. His Honor has asked what is fairness. At that point, I will ask and hope to answer what is forum shopping, because it was on my list. That was the second question I was going to ask. And I'm glad for the opportunity to address this, and I hope that if Your Honors favor us with an opinion, that you will address the matter as well. Every plaintiff in choosing a forum has chosen a forum which their plaintiff believes, for one reason or another, to be salubrious or helpful or convenient for its case. But not necessarily the most fair for all the parties involved. Well, but let's come to that. Every defendant, in moving to change, also seeks to change to a forum which is more favorable for its case or possibly less favorable to the plaintiff's case. Now, that's a given. That's known. It cannot be otherwise. The question is, are those factors of choice, the factors which the law will recognize as fair, reasonable, or appropriate, or are they the kinds of things that would not be on their list? Now, the reason that the plaintiff chose this county, Winnebago County, is because there were 160 treaters, many of whom will be called. He'd spend more than half a million dollars worth of medical attention had been located there. And unless the case is tried in that county, he will not have the benefit of the live testimony of those treaters. Well, but this is obviously a civil case, and there are evidence depositions. Right. And an evidence deposition is not live testimony, and he will lose that advantage. And has he pointed out how many of those seven or six people he will actually call? No, no, no. Obviously not 160 treaters. They would be relevant only to the issue, obviously, of damages. That's the only issue in this case, yes. But certainly not 160, and I believe the briefs narrow it down to six or seven, but there has been nothing pointed out with regard to the relevance of the six or seven. Well, Your Honor, I have two things to say, or three. First of all, the six or seven are the ones who are identified at the very beginning of this case, before there's even discovery. This motion for change of venue is the first thing out from the feds. I do not know if they even filed their answer. So that is the very minimum. Furthermore, the defendants may also wish to use, you know, to call treaters as part of their case. Okay. Depends what their experts tell them about this. This is a brain injury case, terrible, terrible injuries. The medicine about what he suffered and what he will suffer in the future will be the hotly debated point. The Supreme Court, I don't know if Your Honors have had the opportunity to read Fennel yet. I didn't. It was decided and a motion is still pending. I wouldn't have read it except for I did the amicus so I know all about it. The Supreme Court said that the issue of relevance, you know, as to the various witnesses, cannot be taken into consideration at the beginning of the case. It's too early. It would defeat the purposes. That's by way of dicta. But I'd say this, that in this case it is clear that there's going to be a lot of medical evidence. And I believe that it's also clear that there isn't going to be any liability evidence at all. It's, we believe, when going into the case, Mr. Tomasic, who tried this case in the circuit court, is no longer with the firm. He started his own firm. He can't be here today. Otherwise, I would have still argued, but he would have been able to answer some questions. Well, but with the unequal balancing test, there is to be less deference accorded to the plaintiff's choice. How does that figure into this equation? A number of reasons. First of all, I'm not sure that there should really be less deference apportioned to this plaintiff's choice. He couldn't have picked his own, the place of his permanent residence, because he was working for the government in Germany. This was as much residence as he had, where he was living in Loves Park, which is next to Rockford, where this case was filed. So he did the best he could. Secondly, what is the reason for the rule? The reason for the rule is this. That when a plaintiff doesn't choose their home forum, the antennae of the law go up and say, well, wait a minute. Why haven't they chosen their own? Would that be convenient for them? Is there some other reason? Is there some inappropriate reason? I've spoken about that forum shopping. Everybody seeks their own convenience. The issue is, are you seeking your convenience based upon a consideration which the law will recognize as valid and reasonable, like the availability of witnesses? Or are you seeking it for some inappropriate reason? I don't want to suggest inappropriate reasons. So when a plaintiff hasn't chosen their own forum, the law starts to scrutinize and say, well, wait a minute. Maybe there's something that needs to be considered here. We're not given as much deference, because maybe we need to look at all these other matters more closely. But these folks couldn't have done any better or been any more home forum oriented than they were in selecting the county, in fact, where he was located at the time the suit was filed. Best that he could do. But now you talked about the fact that it was too early in the case to really know about which witnesses would be called. Well, we know who it is. I'm just using that as a premise, an introductory part to my next question. But isn't it also too early to know whether or not liability really will be an issue? And in connection with that, courts do look to the possibility that there might need to have the jury view the accident site, which, of course, is in Carroll County. It is in Carroll County. I'll answer your honest question. Ordinarily, one would say that, yeah, it's kind of early to figure out whether or not there's going to be a liability issue. We thought that it had been stipulated to, but it wasn't stipulated to. And the answer denies negligence, although they do admit that the fellow drove across the highway and struck the pedestrian. However, in this case, we've already taken the deposition testimonies of the defendant himself, the driver, and the investigating officer, which established absolutely a whole number of things. He'd been up all night working. He'd only gotten two hours sleep. He was driving. He dozed off. He crossed. He was going this way, crossed over, and he woke up when he hit the gravel. That's what woke him up. And what he saw out of the windshield was our plaintiff, in his words, running for his life. But he couldn't get away. And the officer says that he was hit and he was knocked 150 feet through the air. Now, if this, your honor, asks what is fair, I'll ask what is reasonable. Isn't it reasonable to suppose that they're not going to put these facts before any jury? They're simply going to say, yeah, our agent was negligent. There's not going to be an issue. What issue could there be? What issue could there be, your honors? Unless it's the alien invasion defense and somebody, he wasn't really asleep, somebody took control of his mind or something, or he had an undisclosed narcolepsy that nobody knew about. Or it wasn't really that maybe he had a little heart attack, nobody told him. Unless it's a deus ex machina like that, there's going to be no liability issue in this case. Not even contributory negligence in any way in terms of how far over he might have been on the shoulder of the road. Well, here's the thing. He was on the shoulder of the road. But this man didn't hit him going in the same direction. He crossed all the way over.  Well, the guy came all the way across and ended in a ditch. He ended in one ditch and the plaintiff ended in another. This is what the Supreme Court in Langenhorst said. That every case, every one of these four Dr. Devis cases must be judged on its own facts. And the facts, many of the facts in this case are unique. And one of them is the extent to which there really is an issue about liability. While on the other hand, there's going to be a gigantic argument about the, not the permanency, but the extent of damages and the future needs of a plaintiff. That's a unique feature of this case. Solvance was doing business in Winnebago County. But did they have a substantial presence here? I mean, they had one store. They had 200 employees. They had 200 employees. And this case is about how their employers are made to operate. This is a case, an accident that happened because a guy was working all night. Had to sleep in the store for two hours. That's an unusual factor in this case as well. The burden on review or the standard review is an abuse of discretion. True. And you haven't mentioned that yet. Well, it's hard to talk about the abuse of discretion standard. Because the abuse of discretion standard has two parts. One of them, is it such a determination that no person could reasonably agree? Whenever the court finds that there's been an abuse of discretion, then they're effectively finding that no person could reasonably disagree or agree with it. Even though almost invariably one of the justices does disagree with it. So, in a sense, the actual framing of that rule is a little misleading. There was an abuse of discretion for two reasons. First of all, clearly the record in this case does not even begin to establish that a transfer is strongly supported. The judge does not find that there is no nexus with Winnebago County, which would be necessary in order to make a change of Marine where there are witnesses present. Remember, not only the medical witnesses, but even liability witnesses are residents of Winnebago County. Finally, the judge, another basis for abuse of discretion, besides nobody would agree with it, is that there's an error of law. And clearly there was, we believe, an error of law in the way which the judge treated the issue of burden upon the county. And what he says is, at the end of the conclusion of his discussion, is that here in Rockford we've got a level one center, trauma center. I can't, this courthouse can't be burdened every time somebody gets brought into that center from any place in the state because they received the treatment here. That was his logos for his decision. Well, how is that an error of law? When you're looking at the factor of the burden on the residents of a particular county, or let's say in this case Winnebago County, because they have a medical, a level one medical facility here, I think that's what he was talking about. Well, that's what he was talking about. I think I just beat, but I'd like to answer Your Honor's question. It's an error of law in this way. First of all, it exalts to high importance, the dispositive importance, a factor which the Supreme Court repeatedly holds as a matter of low importance. Next, but more importantly than that, is it centers upon a single factor when the court is required to decide all the factors together. It effectively makes a bright line rule for exclusion without consideration of the fact of how much medical evidence was here versus how little liability evidence was going to be there, and the inconvenience and indeed the loss of live testimony for the plaintiff in this case. Thank you, Your Honor. Thank you. May it please the court, counsel, I'm Linda Kollross on behalf of the defendants. I believe Your Honors have focused in on the issue which the court must decide, and that's did the lower court abuse its discretion in granting transfer from Winnebago to Carroll Counties, and that's a very deferential standard to the trial court. You must find that no reasonable person would agree with what the court did in this case, and I submit that on the record before you, as set forth in the briefs, you cannot so find. There's been very little discussion of actually what the court did below, which was to carefully go through the private interest factors, the public interest factors, the fact that the plaintiff's choice of forum here receives less deference, as you've pointed out correctly, because it's neither their home forum nor the location where the accident took place, and said here, after reviewing all of the factors, the court concluded that transfer was strongly favored, and I'd like to discuss those factors because I don't believe plaintiff has given them much attention here. Let's start with the public interest factors, which the court found strongly favored transfer. Court congestion, undisputed that Winnebago County courts are far more congested than in Carroll County, so can we find there that there was an abuse of discretion, no reasonable court would agree, no reasonable person would agree, no, it's undisputed. How about the connection of the case to the county? Well, here, as plaintiff has addressed, the only connection that this case has to Winnebago County is the provision of medical treatment. The defendant, corporate defendant, resides in Carroll County. The individual defendant resides in Carroll County. The accident took place in Carroll County. Business was being conducted in Carroll County. All of the first responders, fire department personnel, medical personnel, the police department, the police investigation, all centered in Carroll County. So here... But we can't ignore the fact that Sullivan's had a presence in Winnebago County. We are not ignoring that. It's a presence sufficient to establish venue. It's not a substantial presence. They had a hardware and a grocery store in Winnebago County. 200 employees. 200 employees at that location. And that's, you know, a store retail location, long hours. I'm sure a lot of those employees were part-timers. They have nothing to do with what's at issue here. We're not disputing it's enough to establish venue. Certainly it is. We're disputing it's a substantial presence such as to give rise to a justification for burdening both the court and the citizens of Winnebago County with entertaining this litigation. And that's really what the court was getting at in talking about the lower court and talking about this medical center. Because you're going to decide a case that's not just relevant here to these litigants but to other litigants. And the fact that there is a level one trauma center here should not be burdening the citizens with jury duty and the court with additional cases just because plaintiffs in addition to this plaintiff will receive injuries elsewhere throughout the state and will come here for medical treatment. And again, you don't even need to agree with the court below. You might think, no, I don't really agree with that. But can you say no reasonable person would view it that way? Because that's what the question is here. Would no reasonable person agree with the trial court that merely having a level one trauma center here is enough to burden the citizens and the court with cases that otherwise have no connection to the county? Do you agree with opposing counsel that the trial court established a bright line rule for exclusion? No, I do not. No, I do not. The court carefully went through all the factors that I'm talking about. The court went through talking about court congestion and said that favors transfer. Connection of the case to the county, discussed the connection to Carroll County, said that favored transfer. Excuse me. Yes. I think opposing counsel focused specifically, if I understood him correctly, on the point of the level one nursery being a bright line rule saying that if there's a level one care center here, then that is enough to say, or that isn't enough to say, according to the trial judge, that the citizens of Winnebago County should be burdened with a lawsuit. No, the court considered that fact in connection with all the other facts and said looking at that alone in the context, if there were other connections here, the court did not view it as a bright line test. It said in the context with these other factors, and that's what the court is charged with doing. They have to look at the totality of the circumstances and said here, where you don't have any other connection, it would be unfair to burden the citizens and the court system with this litigation. With different facts and other connections, the court might have viewed it differently. I don't believe when you read through the reported proceedings that there was any bright line test imposed. And then we go to the private interest factors. And I think as you rightly pointed out, liability is still at issue here. And the court looked at that and said, you know, the liability is at issue. We don't know how this is going to play out, so we're going to look at who are a lot of these witnesses. Well, Sullivan's personnel are all going to be in Carroll County. They either work there or they live there or they're in Joe Davies County, which is closer to Carroll County. We're going to look at the location. This is an interesting case as far as what happened with the size of the shoulder of the road, where the plaintiff was or wasn't located when he was walking, where the curves are, where sight lines are. This is a case that might be appropriate for a jury view. Again, at this stage of the litigation, we don't know. Then we look at what the plaintiff has tried to focus on. It's speculation that none of the medical providers would come to a trial in Carroll County. He keeps saying, well, we've lost the benefit of life testimony. It can only be by evidence death. That's not supported by the record. That argument wasn't even raised below. They said, yes, we have six witnesses who reside in Winnebago County who provided medical treatment, but there's no evidence in the record that any of them, let alone all of them, will refuse to come to trial. It's just speculation. And he's free to make that speculation but is that enough to find that the court acted as no reasonable person would in transferring venue? I don't believe so, and I don't believe the court should find that. But it's the defendant's burden to show that another forum is more convenient to all parties, correct? Yes, and we believe that that showing has been made here because Carroll County is the location of both of the defendants, the corporate and the individual defendant. It's the location of all the first responders, the police department personnel, the fire department personnel, the ambulance personnel. So we have witnesses who are much closer. Even one of the plaintiff's witnesses, Mr. Augustin, he doesn't live in Carroll County but he's closer to Carroll County by quite a bit than he is to Winnebago County. So we maintain that that showing has been made. If there's a jury view of the site, that's going to be in Carroll County. So we're looking at all of the factors and we're saying at this stage of the litigation, those factors strongly favor the transfer because this case is centered in Carroll County. This isn't a case where there's connections all over the place. It is centered in Carroll County and we believe the trial court properly so found and properly exercised its discretion in looking at that along with all the public interest factors I just talked about and saying, as the court said, this strongly favors transfer. And we believe that that was a reasonable finding and this record does support that finding. Did the defendant submit affidavits with regard to the convenience of the witnesses? The defendant did not. What the defendant did is it relied on facts which this court can also take judicial notices of which is just the relative distance between the different courthouses and noted that it was about 11 miles from Savannah where the corporate headquarters is, where the individual defendant law firm resides to the Carroll County courthouse and it was 67 miles to Winnebago. And so we have facts here that really aren't in dispute. Again, it's relative convenience and when you look at the distances and the location of the accident, relative convenience favors the Carroll County location over the Winnebago County location. And again, we submit that that was reasonable even if this court doesn't agree that it would view that factor the same way that what the court did was reasonable, not unjustified, not irrational which is the burden that plaintiff has before you now in requesting reversal. Do you agree with the point, I believe, opposing counsel made in their brief that the trial court placed too much emphasis on the statistics? He did his own analysis of the relative court, relative burden of numbers of cases on judges in both counties. No, I don't. He was applauded for doing some extra research but his findings were not contrary to the published statistics from the Illinois Supreme Court. Those published statistics which he also cited clearly showed that congestion was much higher in Winnebago County. It was something like 4,700 cases per judge compared to the Carroll County which was like 2,700. So there was a huge disparity in congestion based on that alone. And then he looked further and said, well, Winnebago County, it's basically, you're looking at the 17th Circuit and it's basically comprising the county so that 4,700 number is true. But in Carroll County, it's different. There are other circuit courts comprising that county and when he looked at the relative caseload per judge at Carroll County, Carroll County, the whole county does not have as many cases filed as the per judge caseload in Winnebago County. So I think the judge should be applauded not criticized for looking further. And the courts are very clear. Other cases are very clear in saying that the trial court is in the best position to assess its congestion and it's in the best position to make a determination on that. And I think the court rightly did that here. And again, it should be applauded, not criticized for looking at that matter in depth. Thank you, Your Honors. We rest our case. What's your definition of fairness? My definition of fairness, I think that's a great question. I think you have to look at all of the parties and you look at all of the witnesses and you say, where is this litigation really centered? And that's in Carroll County. I do not believe it's unfair to the plaintiff in this instance. Again, that's the whole reason their choice of forum receives less deference in the first place. They're not residents of Winnebago County. They don't live in Winnebago County now. They're going to have to travel somewhere in any event. They're going to have to live in a hotel while this case is tried. They're going to be out of their home. That's the situation equally in Winnebago County. It's equal in Carroll County. But for all of these other defendants who do live in Carroll County, they will be traveling on a daily basis for the entirety of the trial. And that isn't fair to them. So I think here, where you don't have a plaintiff in their home forum, that fairness is met. And that's why there's less deference given to the plaintiff's choice here. But now, you're not asserting that the test is the, quote, more appropriate forum, are you? That's not the test. But that concept of more appropriate forum is woven in through the case law. And so it's not, again, it's not a test of more appropriate, but it is a consideration. When you're looking at all these factors, that's what you're getting at. Where is it most appropriate? You're looking at each of these factors, but the concept underlying those factors is where is it most appropriate that this litigation be tried? And in this instance, it is definitely Carroll County. Thank you, Your Honors. Thank you. Mr. Carrigan. Thank you, Your Honors. I wasn't going to say anything until the last moment. And apart from answering any other questions that Your Honors may have, I don't want to say this, that the issue is definitely not what is the more appropriate forum. The question is, has an inappropriate forum been chosen? Is the plaintiff's choice, which should only be rarely upset in the case where some other forum is clearly better. It's not a little balancing test like we have in civil trials where this one's a little better, that one's a little better. The plaintiff's choice must be unfair. Your Honor also goes, you couldn't tell me what fair was. How can you tell me what unfair is? Well... Unfair is not fairness. Yeah, it's not fairness. It's the kind of thing that Your Honor wouldn't do in that situation. Well, my definition of fairness is balancing the equities, whether it's good or bad as far as the definition is concerned. When a trial court exercises its discretion, at least in a classical sense, it's acting as a chancellor. And a chancellor typically dealt with equitable remedies and equitable concepts. And so fair and just are two different things. They're not the same thing. What's fair may not be just. What is just may not be fair. When you talk about fairness, you're talking more in the nature of equity and not law. And so you're talking about balancing equities instead of equal protection under the law. I think Your Honor is correct. And I think the courts have said over and over again that this whole form of nonconvenience thing is an equitable doctrine in order to see that where the restrictions of the manual do not secure a situation which is fair, that the courts can remedy it. But it's not an equal balancing test. And that's what the Supreme Court has repeatedly told us. It's an unequal balancing test that the scale has to swing way against the plaintiff's choice in order for the change to be justified. Thank you, Your Honors. Thank you. Thank you very much. The case will be taken under advisement. There are other cases on the call.